UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL ROSS,                                   No. 2:07-cv-01668-MCE-JFM

      Plaintiff,

   v.                                           MEMORANDUM AND ORDER

WOODLAND JOINT UNIFIED SCHOOL
DISTRICT; BOARD OF TRUSTEES OF
THE WOODLAND JOINT UNIFIED
SCHOOL DISTRICT; DOUGLAS
MIDDLE SCHOOL; WOODLAND HIGH
SCHOOL; PLAINFIELD ELEMENTARY
SCHOOL; PIONEER HIGH SCHOOL;
LEE MIDDLE SCHOOL; DOES 7-500
(students and their parents or
legal guardians),

      Defendants.

----oo0oo----

Michael Ross' ("Plaintiff") complaint against Woodland Joint Unified School District ("District"), the Board of Trustees of the Woodland Joint Unified School District ("Board"), various schools in the District, and nearly five hundred unnamed students and parents asserts various claims arising out of his employment as a substitute teacher. Plaintiff alleges several schools have placed him on a "Do Not Call" list.

1

Based on this allegation, Plaintiff avers numerous constitutional violations, breach of contract, defamation of character, and intentional infliction of emotional distress.  Presently before the Court is the District's and the Board's (collectively "Defendants") motion to dismiss for a failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons set forth below, the motion is granted.

**BACKGROUND**

From February 27, 2003 through August 10, 2007, Plaintiff worked as a credentialed substitute teacher in the District. During an assignment at Douglas Middle School ("Douglas"), a student allegedly made a comment about "gays."  Plaintiff claims to have told the student to address any questions about sexual orientation to his parents.  According to Plaintiff, the student complained, telling Douglas' principal that Plaintiff had called the student a homosexual.  On another occasion, a female student at Douglas allegedly complained that Plaintiff had "looked at her wrong."

On the morning of another assignment, Plaintiff called to inform Douglas he was running a few minutes late.  Over the phone, Douglas' principal allegedly told Plaintiff that Douglas had canceled Plaintiff's work assignment "because of something he said."

---

[1] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil Procedure.

2

1  Plaintiff noticed that certain schools and positions within
2 the District were no longer available to him on the web-based
3 "Subfinder" system.  In summer 2006, Plaintiff claims Lee Middle
4 School placed him on a "Do Not Call List" ("DNC List").  Although
5 certain substitute teaching positions in middle schools and high
6 schools were not available to him, Plaintiff alleges he continued
7 to receive offers for positions in elementary schools.
8  District officials told Plaintiff to report any problems to
9 the human resources department.  Plaintiff contacted human
10 resources Supervisor Michael Stevens ("Stevens"), who allegedly
11 explained that the District maintained the DNC List, that
12 substitute teachers were occasionally placed on it, and that the
13 substitute teachers were not informed of their placement on the
14 list.  Stevens added that Douglas' principal had completed an
15 investigation a week and a half earlier and requested that
16 Plaintiff be placed on the DNC List.  Stevens invited Plaintiff
17 to submit a letter detailing his grievances.
18  Plaintiff wrote and mailed a letter to Stevens, but claims
19 that he never heard back from him.  Plaintiff subsequently mailed
20 the same letter, along with a new cover letter, to the District's
21 superintendent.  The superintendent sent Plaintiff a letter
22 stating she would look into his complaints.  He claims he did not
23 hear from her after that communication.
24  On June 7, 2007, Plaintiff received a letter from the
25 District thanking him for his good work during the school year
26 and inviting him to return the following year.  In July 2007,
27 Plaintiff renewed his emergency teaching credential.  Plaintiff
28 now sues for damages.

3

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

///
///
///
///
///

4

1  A court granting a motion to dismiss a complaint must then
2 decide whether to grant leave to amend.  A court should "freely
3 give[]" leave to amend when there is no "undue delay, bad
4 faith[,] dilatory motive on the part of the movant, . . . undue
5 prejudice to the opposing party by virtue of . . . the amendment,
6 [or] futility of the amendment . . . ."  Fed. R. Civ. P. 15(a);
7 Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to
8 amend is denied only when it is clear the deficiencies of the
9 complaint cannot be cured by amendment.  DeSoto v. Yellow Freight
10 Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

11  A *pro se* complaint is "to be liberally construed," and
12 "however inartfully pleaded, must be held to less stringent
13 standards than formal pleadings drafted by lawyers."  Estelle v.
14 Gamble, 429 U.S. 97, 106 (1976).  Yet even a pro se complaint may
15 be dismissed due to a "lack of a cognizable legal theory or
16 absence of sufficient facts alleged under a cognizable legal
17 theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
18 (9th Cir. 1990).

19
20 **ANALYSIS**
21 **1.  State Immunity**
22
23  The Eleventh Amendment to the United States Constitution
24 provides that "[t]he Judicial power of the United States shall
25 not be construed to extend to any suit in law or equity,
26 commenced or prosecuted against one of the United States by
27 Citizens of another State, or by Citizens or Subjects of any
28 Foreign State."

5

Federal jurisdiction over suits against unconsenting states "was not contemplated by the Constitution when establishing the judicial power of the United States." Hans v. Louisiana, 134 U.S. 1, 15 (1890). "[T]he Eleventh Amendment was introduced to clarify the intent of the Framers" that Article III, § 2 of the Constitution "would not provide a mechanism for making States unwilling defendants in federal court." Employees v. Mo. Pub. Health & Welfare Dep't, 411 U.S. 279, 291-92 (1973) (Marshall, J., concurring). This prohibition extends to suits against a state "brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification." In re State of New York, 256 U.S. 490, 497 (1921). "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Employees, 411 U.S. at 280.

### 2. State Agency Immunity

Eleventh Amendment immunity is not limited to suits in which the state itself is a named party. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). "It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a state is actually named as the defendant, but also certain actions against state agents and state instrumentalities." Id. (quoting Poindexter v. Greenhow, 114 U.S. 270, 287 (1885)).

///
///

Public education is typically a local government function. In California, however, the state constitution, statutes, and supreme court decisions have made public schooling a state governmental function. Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 253 (9th Cir. 1992). In Belanger, the Ninth Circuit addressed whether a California school district is a state agency for purposes of Eleventh Amendment immunity. To determine whether a governmental agency is a state agent or instrumentality, a court must examine five factors: "(1) whether a money judgement would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity." Id. at 250-51 (referencing the test set forth in Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988)). The first factor – whether a money judgment would be satisfied out of state funds – is predominant. Mitchell, 861 F.2d at 201-02. Noting that "a judgment against the school district would be satisfied out of state funds" and that "the school district is a state agency that performs central governmental functions," the Ninth Circuit concluded that the Eleventh Amendment protects a California school district from suits in federal court. Belanger, 963 F.2d at 251.

A California Court of Appeal has also found California school districts immune from federal court proceedings. Kirchmann v. Lake Elsinore Unified Sch. Dist., 100 Cal. Rptr. 2d 289 (Cal. Ct. App. 2000).

7

The court noted that most district and state courts, following Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), have found that the Eleventh Amendment does not afford local school districts immunity from suit. Kirchman, 100 Cal. Rptr. 2d at 295-96. Each state, however, structures its public education system independently. Id. Indeed, whether a particular state agency is an arm of the state is a question of federal law that "can be answered only after considering the provisions of state law that define the agency's character." Regents of the Univ. of Cal., 519 U.S. at 429 n.5. Applying the five Mitchell factors, the court concluded that "the relevant criteria favor immunity," and that "the Ninth Circuit in Belanger correctly determined a California school district should be considered an arm of the state for purposes of the Eleventh Amendment." Kirchman, 100 Cal. Rptr. 2d at 301.

Because a California school district is a state agency, Defendants are immune from Plaintiff's suit.

### 3. **Waiver of Immunity**

There are, however, exceptions to Eleventh Amendment immunity. Welch v. Texas Dep't of Highways and Public Transportation, 483 U.S. 468, 473 (1987). "If a State waives its immunity and consents to suit in federal court, the suit is not barred by the Eleventh Amendment." Id. Nonetheless, the Court will find that a state has waived its immunity only where specified "by the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construction."

1  Murray v. Wilson Distiling Co., 213 U.S. 151, 171 (1909).  A state
2  must "give an 'unequivocal indication' that it consents to be sued
3  in a federal court."  Collins v. State of Alaska, 823 F.2d 329,
4  331 (9th Cir. 1987).  This indication may arise from 1) express
5  consent by the state, 2) a provision in a state statute or in the
6  state constitution, or 3) the clearly expressed intent of Congress
7  "to condition the state's participation in a program or activity
8  on the state's waiver of immunity."  Id. at 331-332.
9       As to the first factor above, Plaintiff has made no showing
10 that the District or the Board has consented to the Court's
11 jurisdiction in this case.  On the express disclaimer provided in
12 the Motion to Dismiss, this Court finds that the District and the
13 Board have made no express consent to be sued in federal court.
14      Given the determinations of the Kirchmann and Belanger
15 courts that a California school district is immune from suit, the
16 second and third factors above can also not stand as a basis to
17 find waiver in the present case.  "In order for a state statute
18 or constitutional provision to constitute a waiver of Eleventh
19 Amendment immunity, it must specify the State's intention to
20 subject itself to suit in *federal court*."  Atascadero State
21 Hospital v. Scanlon, 473 U.S. 234, 241 (1985) (superseded by
22 statute on other grounds).  No relevant California state statute
23 or constitutional provision has been identified that would
24 effectuate a waiver of sovereign immunity from suit, in federal
25 court, against the state or an entity found to be an arm of the
26 state.  "California has not waived its Eleventh Amendment
27 immunity."  Shaw v. California Dep't of Alcoholic Beverage
28 Control, 788 F.2d 600, 603 (9th Cir. 1986).

Further, Congress did not clearly express an intent to abrogate the immunity of states in passing the federal Civil Rights statutes. "Neither a federal court nor a state court may entertain a § 1983 action against [a state]." Howlett, By and Through Howlett v. Rose, 496 U.S. 356, 376 (1990). Therefore, this Court finds that no waiver of immunity to suit has been made that would subject the District or the Board to liability in federal court.

**CONCLUSION**

Under the facts as pleaded in Plaintiff's Complaint, Defendants Woodland Joint Unified School District and the Board of Trustees of the Woodland Joint Unified School District are immune from suit in a federal court under the Eleventh Amendment.

However, because Plaintiff is a *pro se* litigant, the Complaint is dismissed with leave to amend should Plaintiff be able to plead some basis for waiver of immunity. Plaintiff may file an amended complaint within twenty (20) court days of the date of this Order.

IT IS SO ORDERED.

Dated: March 26, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE